**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**

DONALD B. HODGES, JOYCE R.
KENDRICK, Individually and on behalf of
the Washington Regional 401(k) Plan, and
on behalf of all similarly situated
participants and beneficiaries of the plan,

        Plaintiffs,

v.

WASHINGTON REGIONAL MEDICAL
SYSTEM and the PENSION
COMMITTEE,

        Defendants.

Case No.: 5:26-cv-05070-TLB

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' CLASS ACTION COMPLAINT**

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT........................................................................................................................... 2

    I.   The Court Can Consider Defendants' Appendices. ............................................................ 2

    II.  Plaintiffs Fail to Establish Any Meaningful Benchmarks..................................................... 5

    III.  Even Assuming a Meaningful Benchmark, Plaintiffs Do Not Allege Material, Sustained

        Underperformance. .................................................................................................... 10

CONCLUSION....................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Abel v. CMFG Life Ins. Co.*,
   No. 3:22-cv-00449, 2024 WL 307489 (W.D. Wisc. Jan. 26, 2024) ........................................... 8

*Al-Saadoon v. Barr*,
   973 F.3d 794 (8th Cir. 2020) ............................................................................................ 6

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
   137 F.4th 1015 (9th Cir. 2025) ...................................................................... 2, 7, 9, 10

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
   579 F. Supp. 3d 1133 (N.D. Cal. 2022) ...................................................................... 9

*Barrett v. O'Reilly Auto., Inc.*,
   112 F.4th 1135 (8th Cir. 2024)............................................................................... 14

*Batt v. 3M Co.*,
   No. 0:25-cv-03149, 2026 WL 674322 (D. Minn. Mar. 10, 2026).................................... 1, 7, 11

*Binder v. PPL Corp.*,
   No. 5:22-cv-00133, 2024 WL 1096819 (E.D. Pa. Mar. 12, 2024) ........................................... 13

*BJC Health Sys. v. Columbia Cas. Co.*,
   348 F.3d 685 (8th Cir. 2003) .............................................................................................. 4

*Carter v. Sentara Healthcare Fid. Comm.*,
   No. 2:25-cv-00016, 2025 WL 2427614 (E.D. Va. Aug. 11, 2025)........................................... 13

*Davis v. Wash. Univ. in St. Louis*,
   960 F.3d 478 (8th Cir. 2020) ...................................................................................... 3, 12

*Dawson v. Brookfield Asset Mgmt. LLC*,
   No. 1:25-cv-00852, 2026 WL 835553 (N.D. Ohio Mar. 26, 2026).................................... 13, 14

*Doll v. Evergy, Inc.*,
   No. 4:25-cv-00043, 2025 WL 4042583 (W.D. Mo. Sept. 10, 2025)........................................... 6

*Elder v. Gillespie*,
   No. 3:19-cv-00155, 2020 WL 2813524 (E.D. Ark. May 29, 2020) ........................................... 3

*Fezer v. Lockheed Martin Corp.*,
   No. 8:25-cv-00908, 2026 WL 1041276 (D. Md. Apr. 16, 2026)........................................... 5, 13

*Fitzpatrick v. Neb. Methodist Health Sys., Inc.*,
   No. 8:23-cv-00027, 2023 WL 5105362 (D. Neb. Aug. 9, 2023)........................................... 5, 7

*Fulton v. FCA US LLC*,
   No. 24-cv-13159, 2025 WL 2800003 (E.D. Mich. Sept. 30, 2025) ........................................... 13

*Hall v. Cap. One Fin. Corp.*,
   No. 1:22-cv-00857, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023)............................................... 7

*In re Quest Diagnostics ERISA Litig.*,
  No. 24-2866, 2026 WL 1783204 (3d Cir. June 22, 2026) .......................................... 10, 11, 12

*Johnson v. Parker-Hannifin Corp.*,
  122 F.4th 205 (6th Cir. 2024) ................................................................................... 13

*Kistler v. Stanley Black & Decker, Inc.*,
  No. 3:22-cv-00966, 2024 WL 3292543 (D. Conn. July 3, 2024) ............................... 13

*Luckett v. Wintrust Fin. Corp.*,
  No. 1:22-cv-03968, 2024 WL 3823175 (N.D. Ill. Aug. 14, 2024) ............................. 10

*Matney v. Barrick Gold of N. Am.*,
  80 F.4th 1136 (10th Cir. 2023) ................................................................................... 3

*Matousek v. MidAm. Energy Co.*,
  51 F.4th 274 (8th Cir. 2022) ............................................................................... *passim*

*McGeathy v. Reinalt-Thomas Corp.*,
  No. 2:25-cv-01439, 2026 WL 617343 (D. Ariz. Mar. 5, 2026) ................................. 6, 7

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018) ............................................................................. 3, 10, 12

*Miller v. Redwood Toxicology Lab'y, Inc.*,
  688 F.3d 928 (8th Cir. 2012) ...................................................................................... 3

*Payne v. Hormel Foods Corp.*,
  No. 0:24-cv-00545, 2024 WL 4228613 (D. Minn. Sept. 18, 2024) ........................... 13

*Phillips v. Cobham Advanced Elec. Sols., Inc.*,
  No. 5:23-cv-03785, 2025 WL 2689268 (N.D. Cal. Sept. 19, 2025) ............................. 5, 7, 8, 9

*Pizarro v. Home Depot, Inc.*,
  111 F.4th 1165 (11th Cir. 2024) ........................................................................... 10, 12

*Renfro v. Unisys Corp.*,
  671 F.3d 314 (3d Cir. 2011) ....................................................................................... 3

*Rubke v. ServiceNow, Inc.*,
  No. 3:24-cv-01050 (N.D. Cal. Apr. 22, 2025) ............................................................ 6

*Ruebel v. Tyson Foods, Inc.*,
  No. 5:23-cv-05216, 2024 WL 3682230 (W.D. Ark. Aug. 6, 2024) ............................. 4

*Sellers v. Trs. of Boston Coll.*,
  647 F. Supp. 3d 14 (D. Mass. 2022) ........................................................................... 13

*Smith v. CommonSpirit Health*,
  37 F.4th 1160 (6th Cir. 2022) ............................................................................. *passim*

*Snyder v. UnitedHealth Grp., Inc.*,
  No. 0:21-cv-01049, 2021 WL 5745852 (D. Minn. Dec. 2, 2021) ............................... 7

*Thomson v. Caesars Holdings Inc.*,
  661 F. Supp. 3d 1043 (D. Nev. 2023) ......................................................................... 13

*Trauernicht v. Genworth Fin. Inc.*,
  No. 3:22-cv-00532, 2023 WL 5961651 (E.D. Va. Sept. 13, 2023) ........................................... 13

*White v. Chevron Corp.*,
  No. 16-cv-00793, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ........................................... 11

*Wildman v. Am. Century Servs., LLC*,
  362 F. Supp. 3d 685 (W.D. Mo. 2019) .................................................................................... 11

*Winston v. City of St. Louis*,
  No. 4:24-cv-01390, 2026 WL 497057 (E.D. Mo. Feb. 23, 2026) ............................................ 5

*Zean v. Fairview Health Servs.*,
  858 F.3d 520 (8th Cir. 2017) ................................................................................................... 3

**INTRODUCTION**

Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss (Dkt. 18) ("Opposition") largely ignores binding Eighth Circuit precedent and undisputable facts; this Court should not. To "nudge" their claim that the American Century TDFs underperformed "from possible to plausible," Plaintiffs must provide "a sound basis for comparison—a meaningful benchmark." *Matousek v. MidAm. Energy Co.*, 51 F.4th 274, 278 (8th Cir. 2022).[1] They claim that selecting four TDFs based on market prominence and then comparing them to the American Century TDFs using risk-adjusted performance metrics is sufficient to clear this hurdle, Opp. at 3, despite key differences in asset allocation, glide path, investment strategy, and risk profile. Mot. at 6. The Eighth Circuit disagrees: a "meaningful benchmark" means a comparison to "peer-group funds" that "hold similar securities, have similar investment strategies, and reflect a similar risk profile" as the American Century TDFs. *Matousek*, 51 F.4th at 281. This failure alone warrants dismissal.

Plaintiffs also needed to allege sustained, material underperformance—"'consistent, ten-year underperformance' that is 'substantial.'" *Batt v. 3M Co.*, No. 0:25-cv-03149, 2026 WL 674322, at *7 (D. Minn. Mar. 10, 2026). While they claim that there is no such requirement, Opp. at 3, the majority of district courts across the country reject the "underperformance" alleged here—no more than 3.04%, and often far less, during a two-year period—as insufficient to state an imprudence claim as a matter of law. Mot. at 11-15. The cases cited by Plaintiffs in support of their position are mischaracterized or from jurisdictions that defer such questions until summary judgment (unlike the Eighth Circuit)—or both. This too requires dismissal.

---

[1] Capitalized terms not otherwise defined herein have the same meanings as in the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint (Dkt. 13-1) ("Motion").

Plaintiffs' various risk-adjusted performance metrics, Opp. at 1-2, do not save their claim. As the Ninth Circuit recognized last year, "an ERISA plaintiff cannot make incomparable funds comparable simply by using a ratio" to risk-adjust performance returns in lieu of a meaningful benchmark. *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1025 (9th Cir. 2025). But even if these metrics were relevant, they still do not support a plausible inference of imprudence here. Plaintiffs' own comparator, the BlackRock TDFs, performed almost identically to the American Century TDFs on these metrics relative to the other Comparator TDFs. *Compare* App. E (showing that, based on Plaintiffs' own data, the BlackRock TDFs underperformed the remaining Comparator TDFs in 470 out of 514 (91.4%) comparisons), *with* Compl. ¶ 68 (alleging that the American Century TDFs underperformed the Comparator TDFs in 512 out of 534 (95.9%) comparisons).

At bottom, Plaintiffs' arguments change nothing. The fact remains that the Complaint does not identify a meaningful benchmark or sustained, material underperformance—the Eighth Circuit requires both. Plaintiffs' claims should be dismissed in full with prejudice.

## ARGUMENT

### I.    The Court Can Consider Defendants' Appendices.

Plaintiffs claim that the Court cannot consider Defendants' Appendices because they are "fresh compilations of third-party Morningstar data" that "are not attached to, incorporated in, or necessarily embraced by the Complaint." Opp. at 19. Not so:

- Appendix A (Dkt. 13-3) contains performance data from Appendix A to the Complaint (Dkt. 2-1) that is simply presented more conveniently for comparison;

- Appendix B (Dkt. 13-4) contains asset allocation data for quarter one 2020 that is publicly accessible via Morningstar. Plaintiffs allege that asset allocation is one of the "most critical criteria for selecting and retaining" TDFs, Compl. ¶ 50, and the Complaint discusses asset allocation generally and with respect to the American Century TDFs, *id.* ¶¶ 28-37; and

- Appendices C and D (Dkts. 13-5, 13-6) contain performance data for quarter one 2020 and

year-end 2022 that is publicly accessible via Morningstar. Plaintiffs necessarily relied on the same performance data in alleging that the American Century TDFs were "demonstrably underperforming and imprudent . . . from 2020 through 2024." Compl. ¶ 75; *see also id.* ¶ 65 ("[F]or several years prior to **and continuing throughout the Class Period**, the [American Century] TDF has consistently underperformed other target date series options . . . ." (emphasis added)), ¶ 68 (alleging that the Plan suffered losses due to the American Century TDFs' underperformance from January 2020 through December 2024).

The Court may consider these Appendices because they are "necessarily embraced by the complaint," *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Specifically, they contain information that is "incorporated by reference or integral to the claim," "subject to judicial notice," and/or a "matter[] of public record." *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012). It was for these exact reasons that the Sixth Circuit endorsed the use of "more recent [Morningstar performance] data" at the motion to dismiss stage in *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1168 (6th Cir. 2022)—a decision that the Eighth Circuit later cited favorably. *See Matousek*, 51 F.4th at 280 (citing *Smith*, 37 F.4th at 1169).

The Eighth Circuit and other circuit courts have likewise endorsed the use of documents containing similar information in affirming the dismissal of investment challenges. *See, e.g.*, *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 486 (8th Cir. 2020) (relying on prospectuses "embraced by the pleadings" to identify fund investment strategies and underlying holdings); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) (approving of district court's use of prospectuses "embraced by the pleadings" to determine that comparator fund "was not a meaningful benchmark"); *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1150 n.11 (10th Cir. 2023) (district court properly considered, among other things, fund summary prospectuses, fund prospectuses, and industry surveys in dismissal order); *Renfro v. Unisys Corp.*, 671 F.3d 314, 319 (3d Cir. 2011) (district court properly considered fund prospectuses in granting motion to dismiss).

The reason why is simple: "to prevent gaming" of the sort Plaintiffs engage in here. *Elder v. Gillespie*, No. 3:19-cv-00155, 2020 WL 2813524, at *4 (E.D. Ark. May 29, 2020) (citing *BJC*

3

*Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687 (8th Cir. 2003) ("[A] plaintiff may not avoid an otherwise proper motion to dismiss by failing to attach to the complaint documents upon which it relies.")). The Complaint alleges that the American Century TDFs were included in the Plan from "2016 through at least the end of 2024" despite underperforming "for several years prior to and continuing throughout the Class Period." Compl. ¶¶ 62, 65. Plaintiffs could have provided the Court with readily available performance data from 2016 through 2024 to support their claim. Instead, they cherry-picked select returns and risk-adjusted performance metrics for just two of these nine years—with the benefit of hindsight—to manufacture a theory of underperformance that is belied by the very performance data they omitted. Mot. at 13-14. Plaintiffs cannot evade dismissal by simply hiding the ball from the Court—particularly when there is no dispute about the accuracy of the asset allocation and performance data contained in Appendices B, C, and D.[2]

The three cases cited by Plaintiffs do not suggest otherwise. Opp. at 20-22. The Opposition tries to distinguish this Court's consideration of a similar chart prepared by the defendant in *Ruebel v. Tyson Foods, Inc.*, No. 5:23-cv-05216, 2024 WL 3682230, at *4 n.4 (W.D. Ark. Aug. 6, 2024) as turning on "three reasons absent here." Opp. at 20. Not so. Just like the chart in *Ruebel*, Appendices B, C, and D rely on data: (i) from a publicly accessible source that is necessarily embraced by the Complaint; (ii) comparable to information found in other documents that the Eighth Circuit has endorsed at the pleading stage; and (iii) whose accuracy is undisputed. *See supra* at pp. 2-4.

True, the court in *Phillips v. Cobham Advanced Elec. Sols., Inc.* did not take judicial notice of exhibits offered for the "primary purpose" of contradicting certain allegations. No. 5:23-cv-03785, 2025 WL 2689268, at *3 (N.D. Cal. Sept. 19, 2025). But there is nothing to contradict

---

[2] The Opposition argues that "Plaintiffs do not concede their accuracy" because "they dispute the inference Defendants draw from them," Opp. at 20, but nowhere do Plaintiffs suggest that the data itself is inaccurate.

4

here—the Complaint omits asset allocation and performance data (from 2020 onward) for the American Century and Comparator TDFs. But even if there were "clear inconsistencies" between the Complaint and Appendices, "the document[s] control[]" where, as here, they are "embraced by the Complaint." *Winston v. City of St. Louis*, No. 4:24-cv-01390, 2026 WL 497057, at \*6 n.3 (E.D. Mo. Feb. 23, 2026) (citation modified).

And the court in *Fezer v. Lockheed Martin Corp.* was not discussing this issue at all, but what was required to plead a meaningful benchmark. No. 8:25-cv-00908, 2026 WL 1041276, at \*8 (D. Md. Apr. 16, 2026). While the court in *Fezer* believed a more "granular analysis" of the proffered alternatives was inappropriate at the motion-to-dismiss stage, *id.*, "the Eighth Circuit has set out a stringent examination[,] which includes a detailed look at the composition of comparator funds, including the type of assets, investment strategies, and risk profiles." *Fitzpatrick v. Neb. Methodist Health Sys., Inc.*, No. 8:23-cv-00027, 2023 WL 5105362, at \*7 (D. Neb. Aug. 9, 2023). Plaintiffs' repeated pleas for the court to defer judicial scrutiny of their comparators until summary judgment, *see, e.g.*, Opp. at 12, 16 & 21-22, thus fall flat.

Accordingly, the Court can and should consider Defendants' Appendices at this stage.

## II.     Plaintiffs Fail to Establish Any Meaningful Benchmarks.

Plaintiffs' imprudence claim fails because they do not plead a meaningful benchmark, as the Eighth Circuit requires. The Complaint simply says nothing about whether the Comparator TDFs "hold similar securities, have similar strategies, and reflect a similar risk profile" as the American Century TDFs." *Matousek*, 51 F.4th at 281. Absent such facts, there is no "sound basis for comparison." *Id.*; *see also* Mot. at 9-11. Plaintiffs' arguments to the contrary are unavailing.

***First***, they claim that multiple courts "applying the meaningful-benchmark standard to this very [American Century] TDF suite have denied dismissal." Opp. at 7. Plaintiffs are wrong. In two of the three cases they cite, *Doll* and *Rubke*, the courts actually held that a meaningful benchmark

5

was **not** required to infer imprudence because the plaintiffs made "significant" and "direct" allegations about the fiduciaries' decision-making processes. *Doll v. Evergy, Inc.*, No. 4:25-cv-00043, 2025 WL 4042583, at *3 (W.D. Mo. Sept. 10, 2025) ("The Court agrees with Plaintiffs that significant allegations of wrongdoing eliminate the need to infer a fiduciary breach through use of meaningful benchmarks."); *Rubke v. ServiceNow, Inc.*, No. 3:24-cv-01050 (N.D. Cal. Apr. 22, 2025), Dkt. 90 at 8 (denying motion to dismiss, as the plaintiffs made "direct allegations of process errors" such that the court did not need a meaningful benchmark to infer imprudence). These allegations included that the fiduciaries did not follow their investment policy statements, failed to assess whether the American Century TDFs were appropriate for their plans, and "uncritically relied on" their investment advisor or, alternatively, ignored "multiple red flags" raised by their investment advisor. *Doll*, 2025 WL 4042583, at *3; *Rubke*, Dkt. 90 at 2-3. There are no such allegations here.[3]

While the court in *McGeathy v. Reinalt-Thomas Corp.*, No. 2:25-cv-01439, 2026 WL 617343 (D. Ariz. Mar. 5, 2026) held that the plaintiff's comparators were meaningful benchmarks for the American Century TDFs, that case only confirms that Plaintiffs' allegations are inadequate. The plaintiff in *McGeathy* provided the following facts about the American Century TDFs and his comparators: (i) investment "aim"; (ii) "potential rewards"; (iii) "potential risks" and "risk level"; (iv) "glide path"; and (v) "the types of investments they engage in." *Id.* at *3. By comparison,

---

[3] Plaintiffs claim that they "plead[] the same kind of failure to act on repeated warning signs," Opp. at 9, but it is unclear what they are referencing. The Complaint contains zero allegations about Defendants' decision-making process—for example, how often the Committee met, what materials the Committee reviewed and discussed at such meetings, and why the Committee retained the American Century TDFs in the Plan. This is unsurprising given that Plaintiffs later admit that they "have never seen" the "contents of [C]ommittee minutes" or any other documents related to Defendants' management of the Plan. Opp. at 24. The Court should disregard the Opposition's invocation of "facts" that the Complaint does not—and cannot—allege, *see, e.g., id.* at 1, 3 & 25, as "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Al-Saadoon v. Barr*, 973 F.3d 794, 804-05 (8th Cir. 2020).

Plaintiffs allege only that the American Century TDFs use a "to" glide path—the rest is a mystery. The reason why is simple. The American Century and Comparator TDFs have "fundamentally different investment strategies and risk preferences," *Phillips*, 2025 WL 2689268, at \*2, \*5-7, including in asset allocation, glide path, and use of active or passive underlying funds. Mot. at 6.[4]

**Second**, Plaintiffs say that the Complaint's risk-adjusted performance metrics "neutralize[]" these key differences by "hold[ing] risk constant and absorb[ing] . . . allocation and glidepath differences," providing "the like-for-like comparison the law requires." Opp. at 12. Their own authority says otherwise. Just last year, the Ninth Circuit affirmed the grant of a motion to dismiss with prejudice, holding that "an ERISA plaintiff cannot make incomparable funds comparable simply by using a ratio" to risk-adjust performance returns. *Anderson*, 137 F.4th at 1025. The Ninth Circuit reasoned that such metrics (like the ones Plaintiffs point to here) do not resolve the underlying problem—an improper performance comparison between dissimilar funds (like TDFs with core structural differences). *Id.* Rather, such metrics "only speculate[] that if a fund with a comparable risk profile had followed the trend of other, presumably riskier, funds, it would have generated higher returns," rather than actually identifying comparable alternative funds in the marketplace. *Id.*; *see also Hall v. Cap. One Fin. Corp.*, No. 1:22-cv-00857, 2023 WL 2333304, at \*7 (E.D. Va. Mar. 1, 2023) (agreeing that risk-adjusted performance metrics "are not magic wands that equalize any two investments as meaningful benchmarks in the first place"). Accordingly, Plaintiffs' scattershot of metrics do not save their claim from dismissal.[5]

---

[4] Plaintiffs' reliance on *Snyder v. UnitedHealth Grp., Inc.*, No. 0:21-cv-01049, 2021 WL 5745852 (D. Minn. Dec. 2, 2021), Opp. at 9, is misplaced—it was "decided before the Eighth Circuit's decision in *Matousek*[,] which provides a more-detailed analysis." *Fitzpatrick*, 2023 WL 5105362, at \*7 n.8; *see also Batt*, 2026 WL 674322, at \*5 ("*Snyder* predates *Matousek* and therefore (understandably) does not engage in the composition-based comparison *Matousek* requires.").

[5] Plaintiffs also suggest that market prominence is a substitute for a meaningful benchmark, *see, e.g.*, Opp. at 6-7, but they cite not one case in support. For good reason. "Several courts have found

7

Plaintiffs relatedly claim that the American Century TDFs are not conservative because "[a] genuinely conservative fund that was prudently managed would post competitive risk-adjusted returns." Opp. at 2. This argument is nonsensical. After-the-fact performance returns (risk-adjusted or not) say nothing about a TDFs' intended investment strategy—it is asset allocation over time that matters. As the Complaint recognizes, a lower allocation to equities and higher allocation to bonds means less risk and an investment strategy "more focused on preservation" than "growth," and vice versa. Compl. ¶ 33. Not only do the American Century and Comparator TDFs have materially different asset allocations for the *four decades* predating retirement, but the American Century TDFs have the lowest allocation to equities and highest allocation to bonds for *every vintage* other than one. *See* App. B (Dkt. 13-4). As the Northern District of California recognized, these differences in asset allocation "reflect fundamentally different investment strategies and risk preferences," i.e., the American Century TDFs have a "more conservative [asset] allocation." *Phillips*, 2025 WL 2689268, at *6-7.

*Third*, Plaintiffs argue that the core structural differences between the American Century and Comparator TDFs do not matter because "American Century itself benchmarked the [American Century] TDFs against the American Funds [TDFs]." Opp. at 9. This characterization is entirely out of context. American Century contrasts the American Century TDFs with an "aggressive competitor"—historically, the American Funds TDFs—to illustrate how the American Century TDFs' conservative, risk-conscious investment strategy holds up versus TDFs with aggressive, equity-heavy investment strategies over a full market cycle (i.e., both upward and downward mar-

---

this very allegation insufficient." *Abel v. CMFG Life Ins. Co.*, No. 3:22-cv-00449, 2024 WL 307489, at *5 (W.D. Wisc. Jan. 26, 2024).

kets). The source cited in the Complaint (¶ 65 n.11) not only confirms that there are material differences between the two, but they also render Plaintiffs' claim of underperformance implausible. It shows that the American Century TDFs outperformed the American Funds TDFs—Plaintiffs' best-performing comparator in 2018 and 2019—from November 1, 2007 through June 30, 2024 based on actual *and* risk-adjusted returns while taking less risk *and* capturing less downside (i.e., losses during market downturns). Ex. 7, One Choice® Target Date Portfolios at 8-9.[6]

*Fourth*, Plaintiffs' efforts to distinguish holdings that dismissed (or affirmed the dismissal of) similar claims for lack of a meaningful benchmark, Opp. at 9-14, miss the mark. Those cases were not dismissed simply because "the plaintiffs never supplied the explanation" of "why the proposed comparators furnish a sound basis for comparison." *Id.* at 10. The problem was that the complaints were either: (i) "missing details" about whether the comparators "hold similar securities, have similar investment strategies, and reflect a similar risk profile" as the challenged funds, *Matousek*, 51 F.4th at 281—just like the Complaint here; or (ii) the complaints' allegations established that the comparators did not "hold similar securities, have similar investment strategies, and reflect a similar risk profile" as the challenged funds, *Matousek*, 51 F.4th at 281—just as Defendants established here. Mot. at 6.

Plaintiffs also misrepresent many of these cases. For example, they claim that *Smith* "involved a different comparison" than the one here. Opp. at 11. But the Sixth Circuit rejected the

_____

[6] Plaintiffs also suggest that dissimilarities between the American Century and Comparator TDFs do not matter because they "share the same retirement-allocation purpose," "glide-path structure," "product category," and "investment purpose." Opp. at 11-12. But these "goals and features are common to *all* TDFs"—"[t]he argument that all TDFs are meaningful benchmarks cannot survive a motion to dismiss." *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1150 (N.D. Cal. 2022) (emphasis added), *aff'd*, 137 F.4th 1015 (9th Cir. 2025); *see also Phillips*, 2025 WL 2689268, at *6 (rejecting "insufficient allegations" that comparators for the American Century TDFs were "meaningful benchmarks" based on "features [] common to most, if not all, [TDFs]").

9

same "apples and oranges" comparison between actively and passively managed TDFs that Plaintiffs make here between the actively managed American Century TDFs and passively managed Vanguard and T. Rowe Price TDFs. *Smith*, 37 F.4th at 1166; Mot. at 6. Plaintiffs similarly suggest that the court's rejection of the plaintiff's comparators in *Luckett v. Wintrust Fin. Corp.* was unrelated to differences in "design, strategy, or risk" as compared to the challenged TDF. Opp. at 3. To the contrary, that was the very reason why the court rejected the plaintiff's "apples to oranges" comparisons between TDFs with different glide paths (to versus through) and investment strategies (active versus passive): "they have 'different aims, different risks, and different potential rewards . . . .'" *Luckett v. Wintrust Fin. Corp.*, No. 1:22-cv-03968, 2024 WL 3823175, at *3-4 (N.D. Ill. Aug. 14, 2024). The same is true here—none of the Comparator TDFs have the same glide path and investment strategy as the American Century TDFs, and thus, comparing them says nothing about prudence. *Meiners*, 898 F.3d at 823; Mot. at 6.[7]

In sum, Plaintiffs fail at step one: they do not provide a "sound basis for comparison—a meaningful benchmark." *Matousek*, 51 F.4th at 280. Their imprudence claim must be dismissed.

### III.    Even Assuming a Meaningful Benchmark, Plaintiffs Do Not Allege Material, Sustained Underperformance.

Plaintiffs' imprudence claim fails for an independent reason: they do not plead sustained, material underperformance. The Complaint instead alleges only that the American Century TDFs underperformed the Comparator TDF by 3.04% at most—and often far less—during two brief snapshots in time before the proposed class period. This is insufficient as a matter of law to support a plausible inference of imprudence. Mot. at 11-15. Plaintiffs' arguments to the contrary fail.

---

[7] While Plaintiffs claim otherwise, Opp. at 9, it is black-letter law that TDFs with different asset allocations, glide paths, investment strategies, and risk profiles are simply not comparable. *See, e.g.*, *In re Quest Diagnostics ERISA Litig.*, No. 24-2866, 2026 WL 1783204, at *4 (3d Cir. June 22, 2026); *Anderson*, 137 F.4th at 1024; *Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1180 (11th Cir. 2024); *Smith*, 37 F.4th at 1167; *Meiners*, 898 F.3d at 823-25.

*First*, they claim that "[e]ven a one percentage point shortfall is not trivial." Opp. at 27. But the Department of Labor resource Plaintiffs point to refers to the importance of monitoring 401(k) plan fees and expenses, ***not*** performance returns. Ex. 8, A Look at 401(k) Plan Fees, at 5. It is black-letter law that "disappointing short-term losses" do not require fiduciaries to "[p]recipitously sell[] a well-constructed portfolio." *Smith*, 37 F.4th at 1166. Rather, "a fiduciary may – and often does – retain investments through a period of underperformance as part of a long-range investment strategy." *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 707 (W.D. Mo. 2019).[8] That is why only sustained, material underperformance—"'consistent, ten-year underperformance' that is 'substantial'"—can support a plausible imprudence claim. *Batt*, 2026 WL 674322, at *7. As the Third Circuit explained just two weeks ago, fiduciaries would otherwise be required "to cut every below-average fund" to chase returns, "creat[ing] chaos." *In re Quest*, 2026 WL 1783204, at *4 ("[m]inor underperformance" during two-year period "does not require immediate change"; only "severe and sustained" underperformance implicates imprudence).

*Second*, Plaintiffs argue that "the Complaint does not rest on raw returns," but "pleads thirteen metrics, eleven of which go beyond raw return." Opp. at 1; *see also id.* at 28-29. But no matter how many alternative metrices Plaintiffs aggregate into a pass/fail test, they do not solve for the fact that the alleged underperformance must be sustained and material to plausibly plead an imprudence claim. Mot. at 11-14. Indeed, Plaintiffs' attempt to distill prudence into a quantitative dashboard of metrics calculated over short periods is incompatible with "the fact-laden, judgement heavy nature of investment decisions"—which are not "a series of yes-or-no, up-or-

---

[8] While Plaintiffs try to distinguish *Wildman* as a trial decision, Opp. at 33, the court was quoting a decision granting a motion to dismiss: *White v. Chevron Corp.*, No. 16-cv-00793, 2016 WL 4502808, at *16 (N.D. Cal. Aug. 29, 2016).

down choices in a vacuum," *Pizarro*, 111 F.4th at 1176—and would lead to ill-advised performance chasing and "chaos." *In re Quest*, 2026 WL 1783204, at *4.

The arbitrary and flawed nature of Plaintiffs' comparison is best illustrated by their own comparator, the BlackRock TDFs, which the Complaint calls an "established industry leader[]" and "among the top five most selected options." Compl. ¶ 76. Comparing the BlackRock TDFs to the remaining Comparator TDFs using the same metrics and data in the Complaint and Appendix A thereto reveals that they "underperformed" in 470 out of 514 (91.4%) comparisons. *See* App. E. This is nearly identical to what Plaintiffs characterize as the American Century TDFs' "pervasive and sustained pattern . . . of imprudence." Opp. at 28. In other words, Plaintiffs ask this Court to infer imprudence from a test deeming one of their own comparators—an "established industry leader[]" and "among the top five most selected options," Compl. ¶ 76—equally as underperforming as the American Century TDFs.[9]

***Third***, Plaintiffs claim that the alleged underperformance—3.04% at most, and often far less—"cannot be dismissed as merely 'modest' underperformance" and that there are no "duration requirements" for underperformance. Opp. at 28, 35. The majority of courts disagree. Mot. at 12-15. The cases cited by Plaintiffs in support of their position do not dictate a different outcome. Many are from jurisdictions that defer such questions until summary judgment—unlike the Eighth Circuit—and thus, are irrelevant. Opp. at 27-32 (*Carter*, *Fezer*, *Trauernicht*, *Fulton*, *Kistler*,

---

[9] The Complaint also contains no facts from which the Court can determine whether a particular fund's results, as measured by Plaintiffs' metrics, indicate good, average, or bad performance such that the American Century TDFs' results in 2018 and 2019 "should have . . . captured the attention of a prudent fiduciary." Opp. at 29; *see* Compl. ¶¶ 53-54. Accordingly, the Court is left only with the allegation that the American Century TDFs "underperformed" just 4 of the 37 "established [TDF] series" on these metrics over a brief period before the proposed class period. Opp. at 4. This amounts to an argument that Defendants were required to pick the best-performing TDFs, which the Eighth Circuit has repeatedly rejected. *Davis*, 960 F.3d at 486; *Meiners*, 898 F.3d at 823.

*Sellers*). Others evaded dismissal because they had additional allegations not present here. *Id.* (*Payne*, *Kistler*, *Johnson*, *Binder*, *Thomson*, *Sellers*).

For example, the plaintiffs in *Kistler v. Stanley Black & Decker, Inc.*, No. 3:22-cv-00966, 2024 WL 3292543 (D. Conn. July 3, 2024) relied on three- and five-year trailing returns, but they also "present[ed] data showing relatively consistent underperformance from 2011 through at least 2021." *Id.* at *11. The plaintiff in *Payne v. Hormel Foods Corp.*, No. 0:24-cv-00545, 2024 WL 4228613, at *8 (D. Minn. Sept. 18, 2024) similarly alleged consistent underperformance from 2017 through 2023, plus the fact that the challenged fund "provided lower [returns] than [a] *safer* [fund] offered by the same insurer." *Id.* at *2, *8. By comparison, the Complaint here alleges just two years of immaterial underperformance as compared to entirely dissimilar funds.[10]

***Fourth***, Plaintiffs' attempts to distinguish *Dawson*, Opp. at 29-30, are inapt:

- The fact that the court in *Dawson* relied on the Sixth Circuit's seminal decision in *Smith*, Opp. at 29, only strengthens *Dawson*'s relevance here—as discussed above, the Eighth Circuit has cited *Smith* favorably. *See supra* at p. 3.

- The complaint in *Dawson* did not "r[i]se and f[a]ll on raw-return spreads." Opp. at 30. The plaintiff in *Dawson* also pointed to turnover ratio in challenging the American Century TDFs—just like here—which the court rejected. *Dawson v. Brookfield Asset Mgmt. LLC*, No. 1:25-cv-00852, 2026 WL 835553, at *19-20 (N.D. Ohio Mar. 26, 2026).

- Regardless of whether the plaintiff in *Dawson* addressed the defendants' underperformance arguments, Opp. 30, the court held that even greater underperformance than what is alleged here is insufficient as a matter of law to infer imprudence. *Dawson*, 2026 WL 835553, at *19.

---

[10] While Plaintiffs suggest that three- and five-year trailing returns for two years equates to "six years of across-the-board underperformance" because these are "multi-year measures," Opp. at 31-32, returns from quarter one 2020 show the flaw in their logic. For example, as of that date, the 2045 vintage of the American Century TDFs was outperforming the 2045 vintages of: (i) the T. Rowe Price TDFs based on three-year trailing returns; and (ii) the BlackRock and Vanguard TDFs based on three- and five-year trailing returns. *See* App. C (Dkt. 13-5) at 3. Under Plaintiffs' logic, this would mean the American Century TDFs (for this vintage) had outperformed the T. Rowe Price TDFs since quarter one 2017 and the BlackRock and Vanguard TDFs since quarter one 2015.

Accordingly, Plaintiffs fail at step two: they do not allege sustained, material underperformance. *Smith*, 37 F.4th at 1167. This too warrants dismissal of their imprudence claim.

## **CONCLUSION**

For the reasons stated above and in Defendants' Motion, the Court should dismiss Plaintiffs' claims in full with prejudice.[11]

Dated: July 7, 2026

Respectfully submitted,

/s/ M. Caroline Wood
William J. Delany (*pro hac vice*)
M. Caroline Wood (*pro hac vice*)
**GROOM LAW GROUP, CHARTERED**
1701 Pennsylvania Ave. NW
Suite 1200
Washington, DC 20006
Tel: (202) 861-6643
Fax: (202) 659-4503
wdelany@groom.com
cwood@groom.com

*Counsel for Defendants Washington Regional*
*Medical System and the Pension Committee*

---

[11] A single paragraph in an opposition brief asking for leave to amend, Opp. at 33, is insufficient—particularly when Plaintiffs did not comply with Local Rule 5.5(e)'s requirements. *See Barrett v. O'Reilly Auto., Inc.*, 112 F.4th 1135, 1140-41 (8th Cir. 2024); *Matousek*, 51 F.4th at 282-83.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 7, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all parties of record.

*/s/ M. Caroline Wood*

M. Caroline Wood
