**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| DONALD B. HODGES and JOYCE R. KENDRICK, Individually and on behalf of the Washington Regional 401(k) Plan, and on behalf of all the similarly situated participants and beneficiaries of the plan,<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON REGIONAL MEDICAL SYSTEM and the PENSION COMMITTEE,<br><br>Defendants. | Case No. 5:26-cv-05070-TLB |

**JOINT RULE 26(f) REPORT**

Plaintiffs Donald B. Hodges and Joyce R. Kendrick ("Plaintiffs") and Defendants Washington Regional Medical System ("Washington Regional") and the Pension Committee (together with Washington Regional, "Defendants," and Defendants together with Plaintiffs, the "Parties") submit this Joint Rule 26(f) Report pursuant to the Court's Initial Scheduling Order (Dkt. No. 17, "ISO").

1. **Plaintiffs' Statement of the Case.**

Plaintiffs are participants in the Washington Regional 401(k) Plan (the "Plan"), a defined-contribution retirement plan sponsored by Washington Regional Medical System. As of year-end 2024, the Plan held more than $240 million on behalf of 4,085 participants. Throughout the period at issue, the American Century One Choice target-date suite (the "AC TDFs") was the Plan's single largest investment, comprising roughly 68% to 76% of Plan assets. Defendants selected the AC TDFs and retained them from approximately 2016 through at least the end of 2024.

1

Plaintiffs allege that a prudent fiduciary employing a reasoned process to monitor the Plan's investments would have recognized that the AC TDFs persistently underperformed comparable, market-leading target-date suites—not only on raw returns, but across a range of risk-adjusted measures (including the Sharpe and Sortino ratios, alpha, information ratio, and batting average)—and would have removed and replaced them. Defendants instead retained the AC TDFs long after the warning signs were apparent, causing the Plan and its participants to suffer tens of millions of dollars in avoidable losses. Count I alleges that all Defendants breached ERISA's fiduciary duty of prudence, 29 U.S.C. § 1104(a)(1)(B); Count II alleges that Washington Regional Medical System breached its duty to monitor the fiduciaries it appointed.

Plaintiffs' primary theory is the imprudent retention of the AC TDFs. Plaintiffs bring this action individually, on behalf of the Plan, and on behalf of a proposed class of participants and beneficiaries they will move to certify under Federal Rule of Civil Procedure 23, principally Rule 23(b)(1), and seek plan-wide relief under ERISA § 502(a)(2) and (a)(3), 29 U.S.C. § 1132(a)(2) and (a)(3), and § 409(a), 29 U.S.C. § 1109(a)—including restoration of the Plan's losses, disgorgement, a constructive trust, surcharge, and other appropriate equitable relief.

## 2. Defendants' Statement of the Case.

Washington Regional is a community-owned non-profit organization that sponsors the Plan. The Plan is a defined-contribution plan designed to help employees save for retirement. Each year, in addition to the contributions participants make to their own individual accounts, Washington Regional matches the contributions. From 2020 through 2024, Washington Regional generously contributed nearly $30 million to participants' accounts. Participants choose how to invest the money in their accounts and can allocate their assets across nearly 20 investment options. These investment options include a variety of types and classes of funds, which give participants freedom and flexibility to manage their investments.

Plaintiffs challenge the inclusion of just one of those investment options in the Plan's investment lineup—the American Century TDFs. Specifically, Plaintiffs claim that the Plan's fiduciaries breached their ERISA fiduciary duties by following an imprudent process that led to the retention of the allegedly-underperforming TDFs. This hindsight attack ignores the Eighth Circuit's binding precedent requiring Plaintiffs to plausibly allege sustained and material underperformance of a meaningful benchmark, and is based on out-of-date comparisons to other, incomparable funds. As is more-fully set forth in Defendants' Motion to Dismiss (Dkt. Nos. 13, 13-1), Plaintiffs fail to state a plausible claim, and their Complaint—which mimics more than a dozen nearly-identical strike suits filed across the country this year—should be dismissed in full, with prejudice.

3. **Are there any Objections pursuant to Rule 26(a)(1)(C) to providing required Initial Disclosures?**

Plaintiffs: No. Plaintiffs will serve their Rule 26(a)(1) Initial Disclosures by August 4, 2026, as directed by the ISO. Plaintiffs will file their opposition to Defendants' Motion to Stay (Dkt. No. 22) by July 29, 2026, and oppose any deferral or stay of Initial Disclosures or discovery.

Defendants: Yes. Defendants filed a Motion to Vacate Deadline for Initial Disclosures and to Stay Discovery (Dkt. Nos. 22, 22-1, "Motion to Stay") on July 15, 2026, respectfully requesting that the Court stay discovery, including the requirement that the Parties exchange initial disclosures and core documents, until the Court has ruled on Defendants' fully-briefed Motion to Dismiss. As is more-fully set forth in Defendants' Motion to Stay, good cause for the stay exists, and Plaintiffs would not be prejudiced by a short stay of discovery deadlines. Defendants therefore object to the exchange of initial disclosures and core documents unless and until the Court denies Defendants' pending Motion to Dismiss.

3

**4. Are there any Objections to the *timing* of Rule 26(a) Initial Disclosures?**

Plaintiffs: No. Plaintiffs do not object to making their Initial Disclosures on or before August 4, 2026, as directed by the ISO. *See supra* ¶ 3.

Defendants: Yes, *see supra* ¶ 3.  Defendants are aware of the "Unacceptable Excuses" stated in Rule 26(a)(1)(E), which is not the basis for Defendants' position as to the timing of Rule 26(a) Disclosures.

**5. Agreed Document Productions.**

The Parties met and conferred on July 14, 2026, and discussed core discovery documents pursuant to ISO ¶ 2(5). The Parties' discussions were aided by a pre-circulated list of categories of such documents, which the Parties subsequently revised by agreement (in the "Plaintiffs' Position" block below). Although the Parties are generally aligned on the scope of core documents, the Parties were unable to agree to the timing of identification or production of documents to be produced as part of or in addition to the required Initial Disclosures in light of Defendants' then-forthcoming (and now pending) Motion to Stay.

Plaintiffs' Position: Plaintiffs oppose Defendants' Motion to Stay and propose the Parties exchange the following core categories of documents with or shortly after their Initial Disclosures.

> *Plaintiffs*: (i) Plan-related documents in Plaintiffs' possession (*e.g.*, any account statements and communications); and (ii) publicly available documents that Plaintiffs discovered during their pre-suit investigation.
>
> *Defendants*: (i) governing Plan documents (*e.g.*, plan documents, adoption agreements, summary plan descriptions, trust agreements, and the investment policy statement), and any amendments; (ii) Pension Committee charters, minutes, and materials; (iii) fiduciary-process records (*e.g.*, investment reviews, scorecards, watch-lists, fund analyses, and RFPs, RFIs, benchmarking, and fee studies relating

4

to the AC TDFs); (iv) investment-advisor agreements; and (v) fiduciary-liability insurance policies and any indemnification agreements within the scope of Rule 26(a)(1)(A)(iv)—each for the period from 2020 to the present.

Plaintiffs further state that the foregoing categories of documents are those on which the Parties have reached agreement as "core documents" and scope; Plaintiffs reserve the right to seek additional categories of documents and for additional periods. To the extent that Defendants have raised objections to initial disclosures that are to be resolved at the Case Management Hearing, Plaintiffs request the Court to fix a date for Defendants' production of the materials. *See* ISO ¶ 4.

Defendants' Position:  Defendants filed their Motion to Stay on July 15, 2026, respectfully requesting that the Court stay discovery until Defendants' fully-briefed Motion to Dismiss has been decided.  As is more-fully set forth in Defendants' Motion to Stay, good cause for the stay exists, and Plaintiffs would not be prejudiced by a short stay of discovery deadlines, including the requirement to exchange initial disclosures and core documents.  Defendants therefore object to the exchange of initial disclosures and core documents unless and until the Court denies Defendants' pending Motion to Dismiss.

6. **Discovery.**

(a) **How many months are reasonably necessary to complete discovery—as measured from the date of the Case Management Hearing?**

The Parties propose bifurcating discovery into fact discovery and expert discovery, and agree to the expert discovery schedule set forth in ¶ 6(e). The Parties disagree on the date from which the discovery period should run and the length of that period, and their respective positions are set forth below. The Parties also disagree as to the timing of class certification, which is discussed in Schedule F attached hereto.

Plaintiffs' Position: Plaintiffs propose an eleven-month period, measured from the date of the Case Management Hearing, which would permit the Court to set a "firm" trial date, ISO ¶ 5, rather than a conditional one. Additionally, the Court has already ordered the commencement of formal discovery, ISO ¶ 6, and as such, Plaintiffs served written discovery requests on Defendants on July 14, 2026—the day *before* Defendants filed their Motion to Stay—to which responses are due on August 13, 2026, Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A). Plaintiffs oppose Defendants' Motion to Stay and any de facto stay during its pendency.

Defendants' Position: As more fully set forth in Defendants' timely Motion to Stay, the Court should stay all discovery, including the exchange of initial disclosures, the exchange of core documents, responses to written discovery, and all other discovery, for good cause pending resolution of Defendants' fully-briefed Motion to Dismiss, which could resolve this case in its entirety.  If the Court ultimately denies Defendants' Motion to Dismiss, Defendants propose a six-month discovery period starting from the denial of that Motion, which is sufficient in this targeted, single-investment challenge.

**(b) Do the parties seek to alter (increase or decrease) the maximum number of written discovery requests allowed by the Rules? If so, please explain.**

No, not at this time. The Parties will proceed under the limits set by the Federal Rules, reserving the right to seek reasonable adjustments by agreement or motion as the record develops.

**(c) Do the parties seek to increase the maximum number of depositions allowed per side? If yes, please explain the necessity and state how many depositions per side are proposed.**

No, not at this time. The Parties will proceed under the limits set by the Federal Rules, reserving the right to seek reasonable adjustments by agreement or motion as the record develops.

**(d) Please characterize the scope and extent of electronic discovery contemplated by the parties as follows: (i) none; (ii) fairly simple and routine; or (iii) complex. If your answer is "Complex," then please complete and attach Schedule A.**

Plaintiffs' position:  Complex. *See* Schedule A.

6

<u>Defendants' position</u>:  Fairly simple and routine.  This lawsuit asserts a standard, single-investment challenge to the inclusion of the American Century TDF suite in the Plan's investment lineup.  The decisions at issue and the monitoring of that investment were made by the Defendant Committee.  The Committee meets in an organized fashion and maintains plan-related documents, meeting materials, and minutes associated with such meetings. Defendants would produce those documents—which are essentially the core documents described above, and which constitute the bulk of relevant documents to be produced in this matter—without the need for any ESI Protocol. As such, electronic discovery requiring an ESI Protocol should be nonexistent or minimal.  Third-party discovery in these lawsuits is also very limited.

**(e) Do you anticipate the use of Expert Witnesses at trial? If so, state proposed dates by which the parties will be in a position to provide initial and rebuttal expert disclosures pursuant to Rule 26(a)(2).**

Yes. The Parties propose the following sequential disclosure schedule for initial and rebuttal merits expert disclosures: (i) Plaintiffs will serve opening expert reports 30 days after the close of fact discovery; (ii) Defendants will serve responding reports 45 days later; (iii) Plaintiffs will serve rebuttal reports 30 days after that; and (iv) expert depositions will be completed within approximately six weeks after the rebuttal reports are served.  Any dispositive or Daubert motions will be filed approximately ten weeks after the close of expert discovery.

**(f) Do the parties presently contemplate the need for a protective order prior to the exchange of documents or information?**

☐ No.

☐ Yes. The parties stipulate to entry of the Court's standard protective order.

☒ Yes. The parties stipulate to entry of a modified version of the Court's standard protective order.

**7. State the parties' best estimate as to the number of days reasonably necessary to fully try the case.**

The Parties' best estimate is that trial in this case will require approximately four to five days. Plaintiffs withdraw their jury demand as to the claims and relief currently pleaded. The Parties agree that, on the present pleadings, any trial will be to the Court.

8. **State whether 90 days—measured from the Case Management Hearing—is a sufficient amount of time to Add Parties and/or Amend Pleadings.**

The Parties state that 90 days, measured from the Case Management Hearing, is a sufficient amount of time to add parties and/or amend pleadings.

9. **Settlement Prospects.**

The Parties addressed settlement prospects during their July 14, 2026, conference and determined that substantive discussions are unlikely to be productive at this stage. The Parties propose engaging in informal settlement discussions as the case progresses.

10. **Special Issues and Schedules.**

___ Federal Jurisdiction is Disputed.

___ Action removed from state court and Plaintiff's Complaint does not specifically allege damages in excess of $75,000.00.

___ Diversity Jurisdiction case where any party is a non-corporate entity (i.e. LLCs, LLPs, General Partnerships, Trusts, Estates, etc.).

___ Original action filed in this Court based on Diversity Jurisdiction where Plaintiff has named one or more "John Doe" Defendant(s).

_X_ Complaint contemplates certification of a Rule 23 Class Action and/or a Collective Action pursuant to the Fair Labor Standards Act.

___ Complaint seeks recovery for personal injuries and/or wage loss.

11. **Have all corporate parties filed the disclosure statement contemplated by Fed. R. Civ. P. 7.1?**

Yes. Defendants filed their Corporate Disclosure Statement (Dkt. No. 14).

12. **Magistrate Judge Jurisdiction. Counsel affirm they have discussed with their clients and each other the option of consenting to Magistrate Judge jurisdiction.**

The parties have conferred and report the following:

____ The parties, by their signatures below, stipulate and consent to Magistrate Judge jurisdiction.

__X__ The parties do not consent to Magistrate Judge jurisdiction.

DATED: July 28, 2026                                 Respectfully submitted,

/s/ Ryan M. Tucker                                   /s/ M. Caroline Wood
Ryan M. Tucker*                                      William J. Delany (*pro hac vice*)
**MILBERG, PLLC**                                    M. Caroline Wood (*pro hac vice*)
800 S. Gay St., Suite 1100                           **GROOM LAW GROUP, CHARTERED**
Knoxville, TN 37929                                  1701 Pennsylvania Ave.
Tel: (865) 247-0080                                  NW
rtucker@milberg.com                                  Suite 1200
*Admitted pro hac vice*                              Washington, DC 20006
                                                     Tel: (202) 861-6643
Josh Sanford                                         Fax: (202) 659-4503
Arkansas Bar No. 2001037                             wdelany@groom.com
**SANFORD LAW FIRM, PLLC**                           cwood@groom.com
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510               *Counsel for Defendants Washington Regional*
Little Rock, Arkansas 72211                          *Medical System and the Pension Committee*
Telephone: (501) 221-0088
josh@sanfordlawfirm.com

*Counsel for Plaintiffs and the Putative Class*

9

### Schedule A — "Complex" Electronic Discovery Anticipated

1. **The parties should explain and help the Court understand the extent to which the anticipated scope, cost and time required for disclosure or production of electronic data is beyond what is reasonably available and/or within the capability of the parties' normal and ordinary course of business.**

Plaintiffs' Position: Plaintiffs anticipate that electronic discovery will involve identifying relevant custodians and collecting, reviewing, and producing multiple years of email and other electronically stored information from Washington Regional Medical System, the members of the Pension Committee, and the Plan's investment advisor(s), recordkeeper, and other service providers, and may involve ESI from third parties. For example, Plaintiffs anticipate that the Parties will search/produce emails and other electronic documents, including those in shared or individual custodial repositories and cloud/share sites (*e.g.*, Microsoft 365, OneDrive, SharePoint, or comparable systems). Plaintiffs reserve the right to request other types of ESI. Because that undertaking exceeds what the Parties handle in the ordinary course of business, it is best managed through an agreed ESI protocol—including negotiated custodians, sources, and search methodology, and the use of experienced e-discovery vendors—rather than on an ad hoc basis. Plaintiffs are prepared to meet and confer promptly on an ESI protocol so that electronic discovery proceeds in an orderly and proportionate manner.

Defendants' Position: Defendants do not agree that this case should be designated "Complex." *See supra* ¶ 6(d). The positions stated herein are not intended to waive that position.

This lawsuit asserts a standard, single-investment challenge to the inclusion of the American Century TDF suite in the Plan's investment lineup. The decisions at issue and the monitoring of that investment were made by the Defendant Committee, and the ultimate factual inquiry goes to that Committee's process. The Committee meets in an organized fashion and maintains plan-related documents, meeting materials, and minutes associated with such meetings.

Defendants would produce those documents—which are essentially the core documents described above and constitute the bulk of relevant documents to be produced in this matter—without the need for any ESI Protocol.  As such, electronic discovery that would require an ESI Protocol should be nonexistent or minimal, and Defendants do not agree that an ESI production or ESI Protocol would be proportional or necessary here.  To the extent an ESI Protocol is necessary, that Protocol would be modest and focused; the number of custodians here would be low, as would the number of search terms given the narrow scope of Plaintiffs' challenge.  Third-party discovery in these lawsuits is also very limited, as the third-party consultant/advisor's materials are incorporated into meeting materials that would comprise part of the "core" documents.

2. **The parties should affirmatively state and confirm that reasonable measures have been taken to preserve potentially discoverable data from alteration or destruction in the ordinary course of business or otherwise.**

Plaintiffs and Defendants confirm that reasonable measures have been taken to preserve potentially discoverable data from alteration or destruction in the ordinary course of business or otherwise.

3. **The parties must acknowledge that they have conferred and reached agreement (or state the mutually established deadline in the near future by which they have agreed to confer) as to the following matters:**

*(A) Categorical types of electronic data that will be searched/provided as part of discovery.*

The Parties will confer on the scope of categorical types of electronic data to be searched within 45 days of the Court's Order on Defendants' Motion to Stay, if that Motion is denied, or as otherwise ordered at the Case Management Hearing.  The Parties' positions on electronic discovery are set forth above.

*(B) Whether the parties will need to formulate agreed search terms, and if so, date by which such terms will be agreed upon.*

The Parties agree to meet and confer in good faith regarding search methodology—including proposed search terms, sources, and custodians—no later than 45 days after the Court's Order on Defendants' Motion to Stay, if that Motion is denied, or as otherwise ordered at the Case Management Hearing.

*(C) Whether third party vendors will be necessary to accommodate electronic discovery.*

Third-party e-discovery vendors will be necessary to accommodate any electronic discovery.

*(D) The format (i.e. pdf, searchable pdf, native or other) and the media (i.e. CD, hard drive, via email attachment, cloud upload, or other) contemplated for the exchange of electronic discovery.*

Plaintiffs' Position: The Parties will meet and confer regarding an ESI Protocol (including production format—*e.g.*, searchable PDF or native with load files and metadata—and media) within 45 days of the Court's Order on Defendants' Motion to Stay, if that Motion is denied, or the Case Management Hearing, whichever is earlier. Within 15 days after that conference, the Parties will submit either a proposed ESI Order for the Court's approval or a joint statement identifying any remaining disputes regarding electronic discovery.

Defendants' Position: An ESI Protocol at this juncture is premature.  Defendants agree to meet and confer regarding the scope of electronic discovery, as noted above, but do not agree that an ESI protocol is or will be warranted for a case of this nature and scope.

4. **The parties should state whether they know of and/or anticipate any objections, disputes, or issues involving electronic discovery that will or might require Court intervention.**

Aside from Defendants' pending Motion to Stay and Motion to Dismiss, and the Parties' differing positions in ¶ 6(d) and corresponding Schedule A ¶ 1 regarding the necessity and scope of electronic discovery, the Parties are not presently aware of any additional specific objections, disputes, or issues involving electronic discovery that will or might require Court intervention.

12

**Schedule F — Rule 23 Class Action and/or FLSA Collective Action**

**1. The parties shall confer and provide a detailed statement of their joint recommendations and/or respective positions on how to structure the litigation. For example, should case management be bifurcated into pre- and post-certification phases—with discovery initially limited to certification issues? If so, the parties should discuss and report agreed deadlines (or each party's respective position on deadlines) typically associated with certification and merits phases, including a schedule for expert disclosures and depositions. Such considerations may be structurally different for FLSA cases—but the Court is in equal need of the parties' input and recommendations. In a "typical" Rule 23 class action, the Court's suggested deadline for filing certification motions is about 6 months from the Case Management Hearing, and pure merits discovery—if a class is certified—should last no more than about 6 to 8 months**

The fact and expert issues central to both class certification and the merits substantially overlap because Plaintiffs' claims challenge a single, Plan-wide fiduciary process and seek Plan-wide relief on behalf of a putative class under Federal Rule of Civil Procedure 23, principally Rule 23(b)(1). Bifurcating case management into pre- and post-certification phases—with discovery initially limited *only* to certification—would be duplicative and inefficient, with no efficiency to gain. The Parties therefore propose that discovery not be bifurcated based on class certification. Fact discovery will encompass both merits and class-certification issues within the same fact discovery period.

The Parties have been unable to agree on the timing of any motion to certify a class (addressed below). Notwithstanding that disagreement, the Parties agree to the following class certification briefing schedule: Defendants' opposition to Plaintiffs' motion for class certification shall be filed by 45 days after the deadline to file the motion, and Plaintiffs' reply shall be filed by 21 days after Defendants' opposition deadline.

Plaintiffs' Position: Plaintiffs will move for class certification approximately 30 days after the close of fact discovery. That timing follows directly from the premise, stated above, that the fact and expert issues central to certification and the merits substantially overlap: the certification

13

motion should be decided on the complete common record, with any expert opinions bearing on certification disclosed on the ¶ 6(e) schedule—Plaintiffs' opening reports served no later than their motion, and Defendants' responding reports in hand before their opposition is due.

Defendants' proposal—a class certification motion three months after the ruling on the Motion to Stay—is unworkable. It rests on an untested premise: that the universe of materials bearing on certification is measured by the categories Defendants themselves have agreed to designate as "core." That premise takes no account of the categories Defendants declined to so designate, and none at all of the fact that Defendants are simultaneously seeking to withhold every document in the case pending resolution of their Motion to Dismiss. Neither the Court nor Plaintiffs is presently positioned to draw conclusions about the universe of relevant and probative documents and communications—only Defendants are, and their view of that universe has never been tested. *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) (discussing information asymmetry inherent in ERISA cases).

Defendants cannot define the scope of discovery unilaterally, or restrict the materials Plaintiffs may investigate and rely upon in support of certification, while simultaneously compressing the time in which Plaintiffs must build that record. Rule 23(c)(1)(A) requires a certification determination "[a]t an early practicable time"—language the 2003 amendment substituted for "as soon as practicable" in recognition that time is often needed to gather the information the certification decision requires, and specifically to avoid "forcing an artificial and ultimately wasteful division between 'certification discovery' and 'merits discovery.'" Fed. R. Civ. P. 23, Advisory Committee's Notes, 2003 Amendments. And the compression is real: under the Schedule A deadlines, the process of conferring on and submitting an ESI protocol runs through the first sixty days of the period Defendants propose, leaving roughly one month for Plaintiffs to

14

prepare a certification motion. The predictable result is not efficiency but duplication: supplemental briefing, or Rule 23(c)(1)(C) motion practice to revisit certification, once the incomplete record is completed.

The Court's guidance quoted above does not suggest otherwise. The "typical" benchmarks—certification motions about six months from the Case Management Hearing, with "pure merits discovery," if a class is certified, lasting another six to eight months—describe a bifurcated case in which certification-focused discovery comes first and merits discovery follows certification: roughly twelve to fourteen months of sequential discovery in all. The Parties agree this is not that case; both propose unified, non-bifurcated discovery precisely because the certification and merits records are the same. Plaintiffs' proposal—eleven months of unified fact discovery with certification briefed immediately at its close—fits within the form's own arithmetic while avoiding the duplication the Court's question is designed to prevent. Defendants, by contrast, would halve the suggested certification runway—moving the motion to month three of a unified period.

Last, Plaintiffs oppose Defendants' proposed requirement (below) that certification-related expert disclosures be made "within a reasonable period of time before class certification briefing." That undefined, certification-keyed expert deadline would reintroduce—for expert disclosures—the very class/merits dividing line the Parties agree should not organize fact discovery. As stated above, any expert opinions bearing on certification will be disclosed no later than the brief that relies on them.

Defendants' Position: Plaintiffs will move for class certification three months after the Court rules on Defendants' Motion to Stay, if that Motion is denied. This is consistent with Rule 23's requirements and the nature of this single-fund ERISA breach of fiduciary duty challenge.

15

Rule 23 itself requires that the Court determine class certification "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). Indeed, as the Supreme Court has recognized, Rule 23 instructs that "class certification should be resolved early on." *China Agritech v. Resh*, 584 U.S. 732, 741 (2018). Plaintiffs' proposal to move for class certification only after eleven months of full merits discovery does not meet that standard; Defendants' three-month proposal does.

Moreover, Plaintiffs' proposed protracted timeline does not square with the nature of this case. Plaintiffs assert that Defendants' three-month proposal would force Plaintiffs to move for class certification before Plaintiffs have the facts they need to "rely upon in support of certification." But this ignores the fact that the Parties have *agreed* upon core categories of documents for production, which Defendants would produce near the outset of the discovery period, if Defendants' Motion to Stay were denied. *See supra* ¶ 5. Nor do Plaintiffs identify which documents they would need beyond those core materials to move for class certification on their single-fund challenge, or why they could not seek any other certification-related discovery from the outset of the discovery period. Thus, Plaintiffs' claims of "information asymmetry" ring hollow, and there is no reason Plaintiffs could not move for class certification within three months after the outset of the discovery period.

Finally, Defendants propose that any party intending to rely on expert opinions in support of or in opposition to class certification make such disclosures within a reasonable period of time before class certification briefing to allow the opposing party sufficient notice of such opinions to allow for a responsive expert report. Plaintiffs oppose this requirement because they suggest that class expert disclosures would be subsumed by merits expert disclosures. But Plaintiffs do not meaningfully explain what expert discovery they would need for class certification, much less how

16

that discovery would relate to merits discovery.  Nor is Defendants' proposed "reasonable" disclosure requirement a problematic "undefined" deadline; it would simply require the parties to act professionally and cooperatively, and Defendants' intent is to avoid unnecessary expenditure of Court resources.

At bottom, Defendants' proposed timeline would allow Plaintiffs to front-load any additional class certification discovery they need (beyond the core document exchange), without the need for formal bifurcation, and would promote efficiency by requiring Plaintiffs to demonstrate their ability to satisfy Rule 23's requirements before the Parties conduct eleven full months of class-wide discovery.

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Ryan M. Tucker
Ryan M. Tucker

18