**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**


**DONALD B. HODGES and JOYCE R. KENDRICK,
individually and on behalf of the Washington
Regional 401(k) Plan, and on behalf of all the
similarly situated participants and beneficiaries
of the Plan**                                                          **PLAINTIFFS**

**V.**                              **CASE NO. 5:26-CV-05070**

**WASHINGTON REGIONAL MEDICAL SYSTEM
and the PENSION COMMITTEE**                             **DEFENDANTS**


<u>**OPINION AND ORDER**</u>

Before the Court are Defendants Washington Regional Medical System and the Pension Committee's (collectively, "WRMS") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 13), Plaintiffs Donald B. Hodges and Joyce R. Kendrick's Response in Opposition (Doc. 18), and WRMS's Reply (Doc. 21). For the following reasons, the Motion is **GRANTED**, and the Complaint (Doc. 2) is **DISMISSED** for failure to state a claim.

Donald B. Hodges and Joyce R. Kendrick filed this putative class action against their employer WRMS for alleged violations of the Employee Retirement Income Act of 1974 ("ERISA"). They explain that WRMS established a 401(k) defined-contribution retirement plan ("Plan") for the benefit of its employees, including Plaintiffs. Employees contribute tax-deferred money to the Plan, and WRMS makes matching contributions. The Plan offers employees several choices for investing these contributions. According to the Complaint, from 2016 to 2024, the most popular choice was the American Century ("AC") Target Date Fund ("TDF"), which held between 68% and 76% of the Plan's assets.

1

(Doc. 2, ¶ 41). TDFs allocate assets over time based on participants' targeted retirement dates. *Id.* ¶ 27. Each "vintage" of the AC TDF—based on expected retirement date—"invests in a combination of proprietary AC mutual funds to provide varying exposure to a mix of asset classes such as U.S. stocks (large-caps and small-caps), international stocks, U.S. bonds, international bonds, investments linked to real estate, and cash-equivalent securities." *Id.*  According to Plaintiffs, the AC TDF has underperformed for years as compared to other TDFs. Consequently, Plaintiffs accuse WRMS of breaching its fiduciary duties to the Plan "by both (1) initially selecting; and (2) consistently retaining the American Century Target Date Fund for years, even when it glaringly underperformed all investment metrics . . . ." *Id.* ¶ 3.

The problem with Plaintiffs' theory is that it fails to plausibly suggest that WRMS's decision to select AC TDF as an investment option—over other TDFs—was imprudent and violated WRMS's fiduciary obligations under ERISA. The statute imposes two primary duties on fiduciaries: loyalty and prudence. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). "[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . ." 29 U.S.C. § 1104(a)(1). The fiduciary shall also discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* In order to state a claim for breach of fiduciary duty, "a plaintiff must make a prima facie showing that the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the Plan." *Braden*, 588 F.3d at 594. *See* 29 U.S.C. § 1109. "The key to nudging an inference of imprudence from possible to plausible is

2

providing a sound basis for comparison—a meaningful benchmark—not just alleging that costs are too high, or returns are too low." *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278 (8th Cir. 2022) (citation modified).

Given the above standards, a breach-of-fiduciary-duty claim under ERISA requires plan participants to point to *comparator investments* that "hold similar securities, have similar investment strategies, and reflect a similar risk profile." *Matousek*, 51 F.4th at 281. The Court is then tasked with evaluating whether the complaint contains enough facts to plausibly show that the comparators the plaintiffs have identified are, indeed, meaningful benchmarks to evaluate the fiduciary's investment performance.

Plaintiffs compare AC TDF to four benchmark funds: the American Funds Retirement Series, the Vanguard Target Retirement Series, the T. Rowe Price Target Series, and the BlackRock LifePath Index series. *See* Doc. 2, ¶ 61. In Plaintiffs' view, these four funds "consistently outperformed most alternatives . . . and are accordingly among the most often selected TDF options." *Id.* But the fact that certain TDFs are "the top 5 largest" and "account[ ] for 80% of all TDF-invested dollars" does not make them comparable benchmarks to other TDFs. *Id.* ¶ 42. Absent details about the comparator funds, the Court is unable to conclude that the sheer market share of the comparators creates a meaningful benchmark. Obviously, fiduciaries select TDFs for any number of reasons, and Plaintiffs cite no law to show that a TDF's market prominence is a proxy for comparability. *See Abel v. CMFG Life Ins. Co.*, 2024 WL 307489, at *5 (W.D. Wisc. Jan. 26, 2024) (rejecting plaintiffs' allegation that their comparators were meaningful benchmarks simply because "'they represent the most likely alternatives' due to their market share").

The Complaint is silent about whether the comparators they have selected hold similar securities, have similar strategies, and reflect a similar risk profile as compared to AC TDF. The lack of such facts is fatal to the Complaint, as "a showing of imprudence [does not] come down to simply pointing to a fund with better performance." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022); *see also Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) ("No authority requires a fiduciary to pick the best performing fund."). Moreover, a fiduciary does not necessarily violate its duties to the plan and participants by selecting a conservative fund. *See Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022) ("At times, the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise.").

Plaintiffs freely admit that they only selected these comparators because they were "target-date suites—investments that share the same retirement-allocation purpose and the same glide-path [to retirement] structure." (Doc. 18, p. 18). But WRMS responds that Plaintiffs are trying to compare apples to oranges:  WRMS explains that "the TDFs Plaintiffs prefer are more aggressive and equity heavy" as compared to AC TDF's "conservative, risk-conscious funds." (Doc. 13-1, p. 15).  Plaintiffs acknowledge that their comparators "might incorporate a glide-path that takes on relatively more (or less) risk," (Doc. 2, ¶ 52); but they claim they have corrected for any major differences by applying their own set of "risk-adjusted [performance] metrics" (Doc. 18, p. 22).

The application of these "risk-adjusted metrics," however, is insufficient to permit the Court to infer that these comparators are proper benchmarks—and that WRMS committed imprudence in failing to select them over AC TDF, especially since the

4

Complaint lacks information about the strategies, risk profiles, distinctions between glide-paths, and details about active/passive fund management with respect to AC TDF or the comparators.[1] *See Meiners*, 898 F.3d at 823–25 (affirming dismissal when plaintiff's "omission of any meaningful benchmark" left only the fact that a fund with a "different investment strategy ultimately performed better"—which "does not establish anything" about prudence); *Smith*, 37 F.4th at 1167 (comparators "inapt" because "each fund ha[d] distinct goals and distinct strategies"); *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1025 (9th Cir. 2025) (finding risk-adjusted "ratios" similar to the "metrics" cited in the case at bar "only speculate[ ] that if a fund with a comparable risk profile had followed the trend of other, presumably riskier, funds, it would have generated higher returns"); *Hall v. Cap. One Fin. Corp.*, 2023 WL 2333304, at *7 (E.D. Va. Mar. 1, 2023) (finding that risk-adjusted performance metrics "are not magic wands that equalize any two investments as meaningful benchmarks in the first place").

It is not the Court's job—nor is it WRMS's—to do the legwork to identify meaningful comparators. *See Meiners*, 898 F.3d at 823. Plaintiffs have failed to meet this burden, which means the breach-of-fiduciary-duty claim under ERISA in Count I is implausible and subject to dismissal. The duty to monitor claim in Count II is also subject to dismissal as derivative of the breach-of-fiduciary-duty claim. *See Allen v. Wells Fargo & Co.*, 967 F.3d 767, 777 (8th Cir. 2020) ("Because the district court properly dismissed Appellants'

---

[1] Any appreciable difference can render a comparator implausible in the Eighth Circuit. In *Davis v. Washington University in St. Louis*, the Court of Appeals rejected one comparison because "TIAA Real Estate Account is actively managed . . . and Vanguard REIT Index Fund is not." 960 F.3d 479, 484 (8th Cir. 2020). The court rejected another comparison because even though the three comparators had similar management structures, they "by contrast, have a lower percentage of international stock." *Id.* at 485.

claims of breach of fiduciary duties, the district court also properly dismissed Appellants'

derivative claims of co-fiduciary liability and breach of the duty to monitor.").

**IT IS THEREFORE ORDERED** that the Motion to Dismiss (Doc. 13) is **GRANTED**,

and the Complaint (Doc. 2) is **DISMISSED WITHOUT PREJUDICE** for failure to state a

claim.

**IT IS SO ORDERED** on this 10th day of August, 2026.

_____
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE